UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTHONY MEDINA,

Plaintiff,

DECISION AND ORDER

08-CV-6516L

v.

DOREEN SKOWRON,
ASAT Program Assistant,
et al.,

Defendants.
_____

Plaintiff Anthony Medina, a prisoner in the custody of the New York State Department of Correctional Services ("DOCS"), commenced this civil rights action *pro se* in August 2008. He is now represented by counsel.

Plaintiff has sued several DOCS employees, alleging various claims relating to his removal from the Alcohol and Substance Abuse Treatment Program ("ASAT") at Wende Correctional Facility in 2008. Defendants have moved for summary judgment.

## BACKGROUND

In or around February 2008, plaintiff enrolled in the ASAT program at Wende.[1] He was also working during that time as a hall porter. Plaintiff also alleges that he had (and continues to have)

_____

[1] From his deposition testimony, it appears that plaintiff did not think that he actually needed drug or alcohol counseling, as he claimed to have been clean for some years, but he seemed to think that participation in ASAT might help his chances for parole. *See* Dkt. #33 Ex. A at 19-20.

various physical ailments, that he is nearly blind, and that he has been diagnosed with antisocial personality disorder.

The ASAT classes at Wende were taught by defendants Doreen Skowron and Leah Hosie. The class that plaintiff was in was taught by Skowron.  Meetings were held five days a week, and each ASAT program lasted six months.

Plaintiff was in the program for two months, but only went to three classes.  Plaintiff's Depo. Tr. (Dkt. #33 Ex. A) at 32.  He testified that the reason for this was that he had medical problems and was "in the hospital almost every day" for therapy, as well as to "attend[] legal matters at other facilities ... ."  Tr. at 32.

On March 3, 2008, Skowron issued plaintiff a counseling notification (sometimes referred to as a "yellow slip") for violating the dress code, based on his showing up for ASAT not wearing his "state green" uniform.  Def. Ex. A.  Plaintiff alleges that he told Skowron that he was going to grieve the matter.

Three days later, Skowron issued a misbehavior report against plaintiff, alleging that he had created a disturbance at an ASAT class.  Dkt. #1 at 38.  Plaintiff attended a disciplinary hearing on March 10, and pleaded guilty to causing a disturbance.  He was sentenced to seven days in keeplock, but apparently he never served that sentence because he was temporarily transferred out of Wende that same day.[2]

On March 20, 2008, plaintiff filed a grievance against Skowron, alleging that she had issued the yellow slip "in retaliation for [his] challenging [her] authority," and that he had a valid excuse for not wearing his state greens.  He also alleged that Skowron was sometimes "intoxicated and/or high," and that she had a "habit of passing gas next to inmates and ... crying when someone complains of the smell."  Dkt. #1 at 40-42.  The grievance was denied on March 31.  Dkt. #1 at 43.

---

[2]Plaintiff alleges that he was in keeplock from March 6 through March 10.  Dkt. #51 ¶ 17.

On April 1, plaintiff was notified of his termination from ASAT.  Dkt. #1 at 46.  Plaintiff filed a grievance over that matter the next day.  Dkt. #33 at 159.

On April 7, 2008, plaintiff was notified that he was being removed from his porter job.  Dkt. #33 at 183.  Plaintiff grieved that as well, alleging that "Skowron had me removed solely because of my grievances ... ."  Dkt. #33 at 162.

The grievances were denied, based on findings that plaintiff "was appropriately removed from ASAT due to lack of progress within the program," and that he was removed from his job "due to security concerns and for working outside his assigned area."  Dkt. #33 at 152.  It appears that on or about April 4, 2008, Skowron had informed an officer that plaintiff had been in an area he was not supposed to be in and was "staring" or "glar[ing]" at her.  Dkt. #33 at 169, 176.

On April 22, 2008, defendant Karen Crowley, the Deputy Superintendent for Programs, sent plaintiff a memo stating that "ASAT staff will allow you back in the program after ninety days ... ."  Dkt. #1 at 58.  Plaintiff states that he eventually reapplied for and was accepted into ASAT in April 2009.  Dkt. #51 ¶ 25.  Plaintiff was also given a new job assignment about a month after losing his porter job.  Tr. at 60-61.

Plaintiff was denied parole in April 2009.  He contends that the reason was his disciplinary record, specifically Skowron's charges against him.  The Parole Board's decision, however, states that it was based on "the extreme violence associated with [the] terrible crime" of which plaintiff was convicted (first degree manslaughter), plaintiff's "well established pattern of criminal behavior," and his "poor record of adjustment while in prison which includes multiple Tier II infractions and multiple Tier III infractions."  Dkt. #33 at 185.

Plaintiff has sued Skowron, Crowley, ASAT Coordinator Leah Hosie, ASAT Supervisor Michael Szemplenski, and Wende's Deputy Superintendent for Security Thomas Sticht.  The complaint asserts claims for First Amendment retaliation, conspiracy, equal protection, disability discrimination, "failure to accommodate disabilities," "failure to furnish an adequate remedy," and due process.

At oral argument on defendants' motion, plaintiff's attorney stated that plaintiff was withdrawing his conspiracy and due process claims, and those claims have accordingly been dismissed. What remains, then, are plaintiff's claims for retaliation, equal protection, and his disability-related claims.

## DISCUSSION

### I. Retaliation

Plaintiff's retaliation claim is based on his allegation that defendants removed him from the ASAT program and the porter job because of his grievances. Defendants contend that there is no evidence that plaintiff's grievances played any role in those decisions, and that the evidence conclusively shows that those decisions were based on proper reasons.

In order to prevail on a claim of unconstitutional retaliation, plaintiff must allege, and ultimately prove, that (1) he engaged in constitutionally protected speech or conduct, (2) defendants took adverse action against him, and (3) there was a causal connection between the protected activity and the adverse action. *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *Crenshaw v. Herbert*, 445 F.Supp.2d 301, 303 (W.D.N.Y. 2006). The filing of prison grievances is a constitutionally protected activity. *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996); *Crenshaw*, 445 F.Supp.2d at 303.

Courts approach prisoner retaliation claims "with skepticism and particular care," however, because "virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act." *Dawes*, 239 F.3d at 491. *See also Graham*, 89 F.3d at 79 ("Retaliation claims by prisoners are 'prone to abuse' since prisoners can claim retaliation for every decision they dislike") (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

Here, virtually the only evidence of retaliatory intent is the temporal proximity between plaintiff's filing of grievances and the actions taken against him. While that can be some evidence of intent, on the record here, it is not enough to give rise to a genuine issue of material fact.

"[I]t is well-settled that temporal proximity alone is insufficient" to show retaliatory motive, particularly where the defendants have come forward with legitimate reasons for their actions. *Diello v. Potter*, 697 F.Supp.2d 410, 414 (W.D.N.Y. 2010) (citing cases). An inmate cannot insulate himself from all adverse actions simply by filing a grievance, and to hold otherwise would be to indulge in specious, "*post hoc, ergo propter hoc*" reasoning, *i.e.*, to permit an inference that simply because the defendants' action followed the plaintiff's protected activity, that the former must have been motivated by the latter. *See Reynolds v. Barrett*, 741 F.Supp.2d 416, 435 (W.D.N.Y. 2010), *Hines v. Hillside Children's Center*, 73 F.Supp.2d 308, 324 ((W.D.N.Y. 1999).

There is substantial evidence here that plaintiff was terminated from both ASAT and his porter job for legitimate reasons. Although plaintiff contends that there is an issue of fact concerning whether his filing of grievances also played a role, I disagree. "[T]he conclusion that the state action would have been taken in the absence of improper motives is 'readily drawn in the context of prison administration where [lower courts] have been cautioned to recognize that "prison officials have broad administrative and discretionary authority over the institutions they manage."'" *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994) (quoting *Sher v. Coughlin*, 739 F.2d 77, 82 (2d Cir. 1984), and *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)). The record before me amply supports defendants' actions, and no reasonable finder of fact could conclude otherwise.

Furthermore, it is hardly surprising, or particularly telling, that plaintiff's filing of grievances and defendants' alleged adverse actions occurred contemporaneously. All of those events were related, in the sense that they all stemmed from the same underlying events; that does not mean that one caused the other. Rather, it was plaintiff's own misconduct that set the chain of events in motion. The temporal proximity of these events, then, is completely unremarkable, given the facts of this case.

- 5 -

**II. Disability Discrimination**

Plaintiff's complaint appears to assert claims for disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12201 *et seq.*, and the Rehabilitation Act of 1973, 29 U .S.C. § 701 *et seq.*  These claims must be dismissed.

Title II of the ADA applies to prisoners, *see Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998); *Morris v. Kingston*, 368 Fed.Appx. 686, 689 (7th Cir. 2010), as does the Rehabilitation Act, *see Armstrong v. Schwarzenegger*, 622 F.3d 1058 (9th Cir. 2010); *Allah v. Goord*, 405 F.Supp.2d 265, 274 (S.D.N.Y. 2005).[3]  The Second Circuit has held, however, that "neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits [for damages] against state officials."  *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001).  *Accord D'Lima v. Cuba Memorial Hosp., Inc.*, No. 09–CV–00608, 2011 WL 2447734, at *3 (W.D.N.Y. June 15, 2011); *Farid v. Bouey*, 554 F.Supp.2d 301, 325 (N.D.N.Y. 2008).  To the extent that plaintiff seeks damages from defendants, then, these claims must be dismissed.  Likewise, insofar as Garcia seeks damages from defendants in their official capacities, the Eleventh Amendment bars his claim.  *See, e.g.*, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Garcia*, 280 F.3d at 107.

The Court of Appeals for the Second Circuit has held that "Title II and Rehabilitation Act suits for prospective injunctive relief may ... proceed against individual officers in their official capacity."  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  In the complaint, plaintiff requests that he be reinstated in the ASAT program, but he has since been readmitted to ASAT.  *See* Plaintiff's Local Rule 56.1 Statement (Dkt. #51) ¶ 21.  That request is therefore moot.

Plaintiff also requests that the disposition of the disciplinary proceedings at issue here be expunged from his record.  For the reasons stated elsewhere in this Decision and Order, I find no

---

[3]"The ADA has three separate titles:  Title I covers employment discrimination, Title II covers discrimination by government entities, and Title III covers discrimination by places of public accommodation."  *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 691-92 (2001).

constitutional violation with respect to those proceedings, and therefore no basis for the relief requested.

In addition, the complaint requests an array of what amounts to class-action-style relief, such as "[m]ak[ing] each inmate enrolled in the ASAT program aware of the ASAT Program," ordering defendants to "[i]mmediately cease enacting and enforcing a new itinerary and new rules and mandates for the ASAT program" which plaintiff finds objectionable, and so forth. This is not a class action, however, and since plaintiff has not demonstrated any basis for such relief with respect to him, he lacks standing to assert such claims. *Duemmel v. Fischer*, 368 Fed.Appx. 180, 182 (2d Cir. 2010) (prisoner who alleged that his removal from sex offender treatment program caused him to be denied parole lacked standing to challenge removal of other inmates from the program).

### III. Equal Protection

Plaintiff alleges that defendants violated his constitutional right to equal protection by terminating him from the ASAT program without due process, while other similarly situated prisoners who were terminated from ASAT have been provided with due process and an adequate remedy for wrongful termination from the program. Complaint ¶ 64.

To prevail on a claim for an equal protection violation, a plaintiff must allege, and ultimately prove, "purposeful discrimination ... directed at an identifiable or suspect class," *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (internal citations omitted), or that he has been intentionally treated differently from others similarly situated, for no rational reason. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). "The standard for determining whether another person's circumstances are similar to the plaintiff's must be ... whether they are 'prima facie identical.'" *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005) (quoting *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002)).

Here, plaintiff has not identified any similarly situated inmates who were treated differently from him, much less shown an "extremely high" level of similarity between them. Since plaintiff has not alleged any facts in support of his equal protection claim, then, this claim must be dismissed.[4]

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #27) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
          August 18, 2011.

---

[4]While my finding that plaintiff's claims must be dismissed renders it unnecessary for the Court to specifically address his allegation that he was denied parole because of the disciplinary charges at issue here, I also note that the evidence does not support this allegation. The Parole Board's decision makes clear that plaintiff was denied parole primarily because of "the extreme violence associated with [the] terrible crime" of which plaintiff was convicted and plaintiff's "well established pattern of criminal behavior." Dkt. #33 at 185. While the Board did mention his poor disciplinary record, no reasonable factfinder could find that plaintiff would have been granted parole but for the charges at issue in this case.